# IN THE COURT OF APPEALS OF IOWA

No. 24-0144
Filed April 9, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TREVOR JAMES JOHNSTON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Des Moines County, John M. Wright,

Judge.

        A defendant challenges the sufficiency of the evidence supporting his

conviction for theft in the first degree.  **AFFIRMED.**

        Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold,

Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney

General, for appellee.

        Considered without oral argument by Tabor, C.J., and Ahlers and

Sandy, JJ.

**AHLERS, Judge.**

A jury found Trevor Johnston guilty of theft in the first degree. He appeals, challenging the sufficiency of the evidence supporting his conviction.

We review sufficiency-of-the-evidence challenges for legal error. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). On appeal, the jury's verdict is binding if it is supported by substantial evidence. *State v. Slaughter*, 3 N.W.3d 540, 546 (Iowa 2024). Evidence is substantial if it "would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *Crawford*, 974 N.W.2d at 516 (citation omitted). In assessing whether substantial evidence supports the verdict, we "view the evidence in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (citation omitted).

Based on the evidence, a reasonable juror could find the following facts. Due to health problems, a homeowner was no longer able to keep up with the maintenance of her house, so she privately listed the property for sale online for $40,000. Johnston responded to the listing. He looked at the house, and after some negotiating, he agreed to buy the house for $32,250. Johnston had a purchase agreement with him, which the homeowner signed. The agreement called for Johnston to pay earnest money of ten dollars and set a closing date for thirteen days later, when the homeowner expected to receive the remaining $32,240 of the purchase price.

Johnston asked for an abstract for the property, which the homeowner's sister provided with the expectation it would be returned within a day. When

Johnston did not return it, the sister called Johnston and asked for it back. Johnston laughed at her and said, "It's mine. I paid $10 for it." He did not return the abstract.

Johnston tried to have documents related to the purchase agreement notarized, but the notary public refused because the documents were not signed in her presence. So Johnston contacted the homeowner, and they both went to the notary. Johnston had the homeowner sign a document in the notary's presence, but in doing so, he covered up the first page of the document.

When Johnston failed to pay the remainder of the purchase price by the date of the closing, the homeowner sent him a text message asking why he had not paid her and telling him that, since he had not paid her, she had changed her mind about selling him the property. Johnston responded with a text that said,

> The house is first off is mine. You sold it to me. Not only do I have the abstract but you signed the quit claim deed. And you sign the check stub. Ergo, by law you are in my house. Everything is recorded at the courthouse. You have till the 1st to get out of my house then I start the eviction process.

The homeowner later discovered that the document she signed before the notary was a deed transferring the property to Johnston. She also discovered that the purchase agreement she had signed included a paragraph that read:

> Buyer acknowledges the property is in poor shape and accepts the Seller concessions of no more and no less than $32,240.00 concessions to be taken off the initial purchase price of the property located at [the street address] Burlington, Iowa 52601. In the event the Seller backs out of th[1] The seller agrees to pay $5,000.00 to the Buyer for loss of time and property.

---

[1] On the admitted exhibit, a line of text cuts off at this point.

This paragraph was not in the purchase agreement when the homeowner signed it. Johnston recorded the purchase agreement and the deed, resulting in the county land records showing him as the owner of the property. He relied on the above-quoted paragraph in the purchase agreement to contend the homeowner sold him the property for ten dollars. He then had the homeowner evicted from the property.

The State charged Johnston with theft in the first degree and forgery. The jury found him guilty of theft in the first degree and not guilty of forgery. As noted, Johnston appeals, contending the evidence was insufficient to sustain his theft conviction.

We start our analysis of Johnston's sufficiency challenge with the marshaling instruction the district court gave the jury:

> The State must prove all of the following numbered elements of the crime of theft:
> 1. On or about the 13th day of October, 2021, [Johnston] did obtain the transfer of ownership of real property from [the homeowner].
> 2. [Johnston] knowingly deceived [the homeowner] in one or more of the following ways:
> > a. Creating or confirming [the homeowner]'s belief or impression as to the existence or nonexistence of a fact or condition which [Johnston] previously created or confirmed.
> > b. Failing to correct a false belief or impression as to the existence or nonexistence of a fact or condition which [Johnston] previously created or confirmed.
> > c. Preventing [the homeowner] from acquiring information pertinent to the disposition of the property involved in the sale or transfer of her home.
> > d. Promising payment or other performance which [Johnston] did not intend to perform or knew he would not be able to perform. Failure to perform, standing alone, is not evidence that the actor did not intend to perform.
> 3. [Johnston] obtained the transfer of ownership of property from [the homeowner] by the deception.

If the State has proved all of the numbered elements, [Johnston] is guilty.

As no objection was made to this marshaling instruction, it is the law of the case for purposes of assessing Johnston's sufficiency-of-the-evidence challenge. *See State v. Schwartz*, 7 N.W.3d 756, 764 (Iowa 2024).

While Johnston does not identify which specific element(s) he challenges, he generally argues the State failed to prove he obtained the house by deception. In support of his argument, he points to his testimony that he called the homeowner's attention to the paragraph in the purchase agreement purporting to reduce the purchase price to ten dollars. He also contends nothing prevented the homeowner from looking at the first page of the document she signed that turned out to be a quitclaim deed.

Johnston's argument disregards two principles that govern our review of his sufficiency-of-the-evidence challenge. First, the jury was not obligated to believe his testimony. *See State v. West Vangen*, 975 N.W.2d 344, 350 (Iowa 2022). Second, we are obligated to view the evidence in the light most favorable to the State, including all reasonable inferences that can be drawn from the evidence, and not in the light most favorable to Johnston. *See State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022).

Applying those principles, we have no difficulty finding substantial evidence supporting the jury's verdict. A reasonable juror could believe the homeowner's testimony that the paragraph purporting to reduce the purchase price for seller "concessions" was not in the contract when she signed it. A reasonable juror could also conclude that Johnston's refusal to provide a copy of the agreement to the

homeowner right after she signed it, as she requested, was part of the ruse to change the written document after the fact. Further proof of Johnston's deception is the absurdity of the purchase price he claims. It would be reasonable for a juror to conclude that the homeowner, who listed the house for sale at a price of $40,000 in the online listing, would not then agree to sell it for ten dollars a few days later. And that is especially true, when a few days after getting the deed recorded, Johnston posted his own online listing asking $42,777 for the property. Additionally, a reasonable juror could conclude that, if the homeowner had agreed to sell the house for ten dollars, there would have been no reason to state the purchase price at $32,250 in the purchase agreement, and then agree to "concessions" to lower the price to ten dollars. Why not just state the purchase price as ten dollars? The fact that the purchase agreement included what Johnston contends is a false purchase price with concessions buried in a later clause to bring the price down to what he claims is the real price of ten dollars further supports a finding that Johnston obtained the property by deception. Similarly, his action in covering up the front page of the deed and not telling the homeowner that she was signing a deed supports a finding that the signing of the deed was also obtained by deception.

Johnston's only challenge is to the sufficiency of the evidence leading to the jury's finding that he obtained the property by deception, and we find substantial evidence supporting the jury's verdict. Therefore, we reject his sufficiency-of-the-evidence challenge and affirm his conviction for theft in the first degree.

**AFFIRMED.**